UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM Y.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MARTIN O'MALLEY,<br><br>　　　　Defendants. | Case No. 23-cv-06158-KAW<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 15, 20 |

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for further proceedings. Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's cross-motion for summary judgment.

## I.   BACKGROUND

Plaintiff filed for Title XVI benefits on May 23, 2017. (Administrative Record ("AR") 244.) The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. (AR 264, 271.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"); the hearings was held on November 16, 2020 and April 26, 2022. (AR 183, 234.)

Following the hearing, the ALJ denied Plaintiff's application on November 22, 2022. (AR 31-46.) A request for review of the ALJ's decision was filed with the Appeals Council on January 19, 2023. (AR 416-17.) The Appeals Council denied Plaintiff's request for review on September 27, 2023. (AR 1.)

On November 28, 2023, Plaintiff commenced this action for judicial review pursuant to 42

U.S.C. § 405(g).  (Compl., Dkt. No. 1.)  Plaintiff filed the motion for summary judgment on April 26, 2024.  (Pl.'s Mot., Dkt. No. 15.)  Defendant filed an opposition and cross-motion for summary judgment on June 27, 2024.  (Def.'s Opp'n, Dkt. No. 20.)  Plaintiff filed a reply on July 11, 2024. (Pl.'s Reply, Dkt. No. 21.)

## II.     LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under SSA regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b).  At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721.  If the answer is no, the claimant is not disabled. *Id.*  If the answer is yes, the Commissioner proceeds to step three and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d).  If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional

capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner at step five. *Id.* at 954.

## III.   DISCUSSION

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to find that Plaintiff's lumbar radiculopathy, carpal tunnel syndrome, and neuropathy were severe impairments at step two; (2) the ALJ erred in rejecting Plaintiff's treating and examining sources; (3) the ALJ improperly rejected Plaintiff's testimony; (4) the ALJ erred in determining Plaintiff's RFC; (5) the ALJ erred in relying on vocational expert ("VE") testimony based on an incomplete hypothetical, and (6) the ALJ failed to resolve discrepancies between the VE's testimony and publicly-available job number estimates.

### A.   Step Two Severe Impairments

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). As a result, "[a]n impairment or combination of impairments may be found 'not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290).

Plaintiff argues that the ALJ should have found his lumbar radiculopathy, carpal tunnel syndrome, and neuropathy were severe impairments. (Pl.'s Mot. at 9.) The ALJ found that Plaintiff's lumbar radiculopathy and carpal tunnel syndrome were non-severe because the record did not include updated imaging of the lumbar spine to confirm pathology or electrodiagnostic

3

testing to confirm carpal tunnel syndrome. (AR 37.) The ALJ did not address neuropathy at this step.

The Court finds that the ALJ erred. Again, at step two, the question is whether there is evidence establishing that the impairment "has no more than a minimal effect on an individual's ability to work." *Webb*, 433 F.3d at 686. There is no dispute that Plaintiff was diagnosed with lumbar radiculopathy and possible carpal tunnel, and that Plaintiff had limitations based on these diagnoses, yet the ALJ rejected these diagnoses based solely on the lack of specific diagnostic examinations. (AR 37, 43, 925, 936.) As to the neuropathy, the ALJ did not address this diagnosis at all, and thus gave no reasons for the Court to review.

Defendant argues that the ALJ noted later that April 2018 x-rays of Plaintiff's lumbar spine were normal, Plaintiff reported that Flexeril worked better than other therapies for neuropathic pain, and there was no physical deformity of the wrist. (Def.'s Opp'n at 4-5; AR 41-42.) None of these reasons were given to explain the non-severe finding, nor is it clear that they would be sufficient to satisfy step two. For example, the fact that the April 2018 x-rays were normal appears irrelevant given that Plaintiff did not show signs of lumbar radiculopathy until November 2021. (*See* AR 37.) Likewise, Plaintiff's report that Flexeril worked better than other therapies did not necessarily mean he suffered no pain or limitations. Indeed, at a later visit, Plaintiff continued to report chronic pain. (AR 105-106.) Finally, it is unclear that carpal tunnel would necessarily result in physical deformity of the wrist.

In the alternative, Defendant argues that the ALJ's RFC reflected limitations from Plaintiff's lumbar radiculopathy, carpal tunnel, and neuropathy. (Def.'s Opp'n at 5.) As an example, Defendant points to the ALJ's assessment of a sit/stand option to account for Plaintiff's alleged neuropathy and back issues. (*Id.*) As Plaintiff points out, however, the neuropathy and lumbar radiculopathy also affected his ability to walk, and it is unclear that the ALJ considered such effects. (*See* Pl.'s Mot. at 11.) Thus, the Court concludes that the ALJ erred by failing to properly consider Plaintiff's carpal tunnel syndrome, lumbar radiculopathy, and neuropathy at step two.

4

**B.     Doctor Opinions**

Next, Plaintiff argues that the ALJ gave insufficient weight to the opinion of Plaintiff's treating physician, Maki Aoki, M.D., and Plaintiff's examining physician, Laura Jean Catlin, PsyD. (Pl.'s Mot. at 12.)

Under the updated regulations, the SSA "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." 20 C.F.R. § 416.920c(a). Instead, each medical opinion's persuasiveness is evaluated based on various factors, the most important of which are "supportability" (the extent to which the medical opinion is supported by relevant and objective medical evidence) and "consistency" (the extent to which a medical opinion is consistent with evidence from other medical and nonmedical sources). *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022). While a medical source's relationship with the claimant is to be considered, "the ALJ no longer needs to make specific findings regarding these relationship factors." *Id.* An ALJ, however, "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (internal quotation omitted).

   **i.     Dr. Aoki**

Dr. Aoki opined that Plaintiff could occasionally reach, handle, and finger, and that Plaintiff could sit for four hours and stand/walk for less than two hours. (AR 43.) The ALJ found this opinion "somewhat persuasive but ultimately overly restrictive." (AR 43.)

With respect to Dr. Aoki's opinion that Plaintiff could occasionally reach, handle, and finger, the ALJ found the opinion was unsupported because the record did not contain electrodiagnostic studies. (AR 43.) The ALJ further found that Plaintiff did not have complaints or treatment for right hand pain prior to November 2021, and that the available clinical findings consisted of one observation of tenderness to palpation over the right wrist. (AR 43.)

The Court finds these are not substantial reasons for rejecting Dr. Aoki's opinion regarding Plaintiff's ability to reach, handle, and finger. The ALJ's reliance on the lack of complaints or

5

1    treatment for right hand pain prior to November 2021 ignores that this was a new ailment.
2    Likewise, the ALJ's finding that the only available clinical study was one observation of
3    tenderness to palpation in December 2021 is incorrect; Plaintiff points to multiple other
4    observations of pain, tenderness, numbness, and impairment in the hands.  (Pl.'s Mot. at 13; AR
5    84 (November 3, 2022 observations of weakness and numbness in the right thumb, decreased
6    sensation in the right hand), 116 (July 8, 2022 observations of tenderness to palpitation over radial
7    side wrist, mild positive Tinel's at carpal tunnel, and pain over the lateral medial epicondyle), 140-
8    41 (March 21, 2022 observations of inability to grip or lift very much and tenderness to palpitation
9    over radial side wrist).  Finally, to the extent the ALJ found that the lack of electrodiagnostic
10   studies was dispositive, the ALJ had "an independent duty to fully and fairly develop the record
11   and assure the claimant's interests are considered."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150
12   (9th Cir. 2001); *see also Christopher E. v. Comm'r of SSA*, No. 6:18-cv-00824-MK, 2019 U.S.
13   Dist. LEXIS 132507, at *22 (D. Or. Aug. 7, 2019) ("the ALJ had a duty to order further
14   dispositive testing to protect the Plaintiff and failed to do so").

15          As to Dr. Aoki's opinion regarding Plaintiff's ability to sit, stand, and walk, the ALJ found
16   that the positive straight leg raise test on the right in December 2021 was not reflected elsewhere
17   in the record.  (AR 43.)  The ALJ further found that Plaintiff previously denied radiating pain
18   symptoms and displayed only mild pain with range of motion and tenderness to palpation.  (AR
19   43.)  The ALJ pointed to Plaintiff's ability to drive, and that he benefited from medications such as
20   gabapentin and Flexeril.  (AR 43.)

21          The Court again finds these are not substantial reasons for rejecting Dr. Aoki's opinion.
22   First, it is not apparent that the ALJ could simply ignore the December 2021 straight leg raise test
23   based on the lack of other similar results, particularly when the ALJ did not point to any
24   contradictory test results.  Second, the ALJ claimed there was a lack of prior complaints, but the
25   record reflects other observations of pain and limitations on standing.  (*See* AR 140 (March 21,
26   2022 complaints of chronic pain and inability to stand for long periods of time and restricted ankle
27   motion).)  Third, the ALJ pointed to Plaintiff's ability to drive, but failed to explain how the
28   ability to drive contradicted Dr. Aoki's opinion that Plaintiff could sit for four hours and

1  stand/walk for less than two hours. Finally, the ALJ found that Plaintiff benefited from
2  medications, but Plaintiff points out that he continued to report pain even when using medication.
3  (Pl.'s Mot. at 13-14; *see* AR 105 (July 12, 2022 report that Flexeril helped at night but that
4  Plaintiff was still in pain during the day), 850 (October 15, 2021 report that gabapentin not
5  effective for chronic back pain), 934 (November 12, 2021 report that gabapentin makes him
6  depressed and that he was suffering 8/10 pain).

Accordingly, the Court concludes that the ALJ erred by failing to provide an explanation for rejecting Dr. Aoki's opinion that was supported by substantial evidence.

### ii.  Dr. Catlin

Dr. Catlin found Plaintiff had marked limitations in multiple areas related to the ability to concentrate, persist, or maintain pace, that Plaintiff would be absent from work 4 or more days per month and off-task for 30% of an 8-hour workday, and that Plaintiff's symptoms and limitation would cause him difficulty in attending appointments regularly, taking medications, and consistently engaging with treatment. (AR 44.) The ALJ found Dr. Catlin's opinion was unpersuasive, inconsistent with her clinical findings, and unsupported by the record as a whole. (AR 44.) For example, the ALJ found that Dr. Catlin found marked limitations in the ability to concentrate despite observing that Plaintiff was able to sustain attention during the evaluation and test results showing a low average ability to sustain attention, concentration, and mental control. (AR 44.) The ALJ further found that Dr. Catlin failed to explain the basis for work absences or time off-task, and that this opinion was at odds with evidence that Plaintiff did attend appointments regularly. (AR 44.)

The Court finds no error. As the ALJ noted, Dr. Catlin found marked limitations in Plaintiff's ability to concentrate, which was not consistent with Dr. Catlin's observations that he was able to sustain attention during the evaluation and his test results showing a low average ability to sustain attention, concentration, and mental control. (AR 44.) Further, the ALJ noted that Dr. Catlin's opinion that Plaintiff's marked symptoms affected his ability to attend appointments regularly and consistently engage with treatment was contradicted by evidence that Plaintiff did in fact attend appointments regularly. (AR 44, 872.) Plaintiff points to evidence that

he struggled to attend or establish medical appointments, but his citations are not persuasive. (Pl.'s Mot. at 15.) For example, Plaintiff points to missing an EMG appointment, but the doctors' notes state that the appointment was missed because he could not get a ride, not because he forgot or otherwise neglected to attend. (AR 100.) Likewise, Plaintiff points to his failure to set up an appointment because he did not know he needed to set up the appointment, but this single example neither demonstrates a pattern nor shows that his failure was due to struggles with attention or mental control. (AR 107.) Plaintiff also points to testimony in which he purportedly stated he had so many appointments that he could not keep track of them, but the cited evidence was Plaintiff's testimony that he had so many doctor appointments that he could not remember when a specific prior appointment had taken place. (AR 198.) Finally, Plaintiff points to a statement by a former employer that Plaintiff was often absent from work for health reasons, but this does not contradict the ALJ's finding that he regularly attended his medical appointments. (AR 514.) In short, the ALJ could reasonably find there was no evidence that Plaintiff failed to regularly attend and make his medical appointments, which in turn contradicted Dr. Catlin's opinion that Plaintiff's inability to concentrate affected his ability to attend appointments regularly.

The Court concludes that the ALJ did not err because the ALJ provided an adequate explanation supported by substantial evidence in rejecting Dr. Catlin's opinion.

### C. Rejection of Plaintiff's Testimony

Next, Plaintiff argues that the ALJ erred by failing to identify which portions of Plaintiff's testimony were not credible, as well as by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony. (Pl.'s Mot. at 16.) In the absence of affirmative evidence of malingering, the ALJ may reject a claimant's testimony by offering clear and convincing reasons for doing so. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

"A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (internal quotation omitted). Thus, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

1   undermines the claimant's complaints." *Id.* (internal quotation omitted).

2   Here, the ALJ stated Plaintiff's allegations and testimony, before concluding that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 40.) The ALJ then summarized the medical evidence, but did not connect this to any particular testimony by Plaintiff, let alone explain how it undermined Plaintiff's testimony. The ALJ simply went on to discuss the various medical opinions, before determining the RFC. (AR 40-44.) While Defendant argues that the ALJ identified medical evidence that could relate back to Plaintiff's testimony, the ALJ never made that connection. (*See* Def.'s Opp'n at 11-14.)

As the Ninth Circuit has found, "providing a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing *reasons* for finding the claimant's symptoms testimony is not credible." *Brown-Hunter*, 806 F.3d at 494. Thus, based on the record, the Court is unable to determine why the ALJ rejected Plaintiff's testimony. Accordingly, the Court finds that the ALJ erred, and that remand is necessary to allow the ALJ to determine the extent to which Plaintiff's testimony affects his disability claim. *See Brown-Hunter*, 806 F.3d at 495-96 (remanding for further proceedings to allow the ALJ to make a proper disability determination in the first instance where the ALJ failed to specify which testimony was found not credible and why).

### D. Incomplete RFC and Hypothetical to Vocational Expert

Plaintiff argues that the RFC is not supported by substantial evidence in the record because it did not include all of Plaintiff's limitations. (Pl.'s Mot. at 20.) In support, Plaintiff points to the errors discussed above, *i.e.*, the ALJ's omission at step two, the failure to consider certain medical opinions, and the rejection of Plaintiff's testimony. (Pl.'s Mot. at 20-21.) Likewise, Plaintiff argues that the hypothetical presented to the VE was incomplete because it did not accurately reflect Plaintiff's limitations due to those same errors. (Pl.'s Mot. at 21-22.)

As discussed above, the Court agrees that the ALJ erred as to step two, Dr. Aoki's opinion, and Plaintiff's testimony. Therefore, the RFC and the hypothetical to the VE may be incomplete.

9

### E. Job Number Estimates

Finally, Plaintiff argues that the ALJ erred by failing to reconcile the VE's testimony with available job estimates. (Pl.'s Mot. at 22.) Specifically, the VE testified that based on the ALJ's RFC, a hypothetical person could work as a Bonder (45,000 jobs), Touch-Up Screener (27,000 jobs), and Table Worker (27,000 jobs), with a 10% erosion for the sit-stand option. (AR 227.) Plaintiff asserts, however, that estimates from Job Browser Pro, a peer-reviewed software used by many VEs, show that nationally, there were only 10 jobs for Bonders, 1,076 jobs for Touch-Up Screeners, and 979 jobs for Table Spotters, a combined total of 2,065 jobs. (Pl.'s Mot. at 23.) The Ninth Circuit has found that where the job estimates provided by Job Browser Pro and the VE differed significantly, remand was appropriate to allow the ALJ to address the evidence and resolve the inconsistency. *White v. Kijakazi*, 44 F.4th 828, 837 (9th Cir. 2022) (requiring remand where Job Browser Pro estimated approximately 4,000 jobs while the VE had testified there were approximately 170,000 jobs).

Defendant argues that Plaintiff cannot raise this issue because Plaintiff did not question the VE at the hearing about the sources of her data. (Def.'s Opp'n at 20.) In *White*, however, the Ninth Circuit rejected the argument that such information had to be presented to the ALJ; rather, the Ninth Circuit found that the submission of the estimated job numbers to the Appeals Council was sufficient. 44 F.4th at 837. Such is the case here, where Plaintiff presented the jobs numbers to the Appeals Council. (AR 525-26.)

In the alternative, Defendant argues that this case is akin to *Wischmann v. Kijakazi*, 68 F.4th 498 (9th Cir. 2023). (Def.'s Opp'n at 20-21.) There, the Ninth Circuit explained that in deciding whether the ALJ had a duty to address a conflict in job-number evidence, a court must "consider on a case-by-case basis whether new evidence submitted by a claimant is 'meritless or immaterial' or has 'significant probative' value." *Wischmann*, 68 F.4th at 507. The Ninth Circuit found that results from Job Browser Pro were not of significant probative value where the plaintiff provided no information about how the job numbers were produced other than the name of the software program. *Id.* For example, the letter did not state whether the attorney replicated the methodology set forth by the VE, what queries were entered into the program, what variables were

changed, what filters were applied, or what version of the program was used. *Id.* Here, in contrast, Plaintiff did identify his methodology by using the same DOT job codes as those used by the VE. (*See* AR 45, 525-29.) The Ninth Circuit in *White* found this sufficient. 44 F.4th at 837 (finding that the plaintiff had used the same methodology where the plaintiff used the same DOT codes that the VE had used).

Accordingly, the Court finds that the ALJ erred by failing to resolve this inconsistency between the job number estimates provided by Plaintiff and the VE.

### IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment. Because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence was properly evaluated, remand is appropriate. On remand, the ALJ must properly evaluate the evidence based on applicable law and consistent with this order.

IT IS SO ORDERED.

Dated: March 27, 2025

KANDIS A. WESTMORE
United States Magistrate Judge